UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re                                          :
                                               :
HOLOCAUST VICTIMS ASSETS                       :
LITIGATION                                     :
                                               :         ADDENDUM TO
                                               :         MEMORANDUM IN SUPPORT
                                               :         OF APPEAL
                                               :
                                               :
                                               :         Case No. 10-cv-4346 (ERK)
-----------------------------------------------------------------x

## INTRODUCTION

The opportunity afforded by the Court to Jeffrey and Dennis Salinger ("the Salingers") to be heard on Wednesday, September 22nd 2010, is very much appreciated.

As discussed, this brief Addendum is respectfully submitted, to address the principal issues canvassed in court, and to summarize the Salingers' responses. It is intended to be read in conjunction with the Memorandum in Support of Appeal filed on behalf of the Salingers on August 18th, 2010 ("the Memorandum").

The points dealt with herein are just three.

## I. THE LIST OF POWERS OF ATTORNEY AFFORDS INDEPENDENT CORROBORATION, FROM A SOURCE EXTRINSIC TO THE LIST OF ACCOUNT OWNERS, THAT FRITZ GUMPERT WAS AN ACCOUNT OWNER

(A) Fritz Gumpert is listed as a "probable account holder."

See Rules Governing the Claims Resolution Process ("ICEP recommended that the Accounts with the highest likelihood of belonging to Victims be published.").

(B) There is independent evidence corroborating the ICEP's finding.

(C) On the list of "Powers of Attorney," Fritz' brother, Hans Gumpert, is listed as holding a Power of Attorney for Fritz Gumpert.  Pages 1 and 9 of that list are attached. See Memorandum, page 11.

(D) The list of Powers of Attorney affords independent corroboration, from a source extrinsic to the list of Account Owners, that Fritz Gumpert was indeed an Account Owner, bearing in mind that plausibility of a claim is the standard to be met.

(E) This is because:

(i) The list of Powers of Attorney is a quite separate list, the focus of which, as its title itself makes clear, is Power of Attorney holders.

(ii) It therefore reflects documentary evidence which is quite different to the evidence which reflects a bank account.

(iii) There, in the list of Powers of Attorney, Hans Gumpert is listed as holding a Power of Attorney for Fritz Gumpert.

(iv) The relationship between Fritz Gumpert and Hans Gumpert evidenced by the Power of Attorney is quite separate and distinct from any relationship between Fritz Gumpert and Gertrud Gumpert, his mother, which is evidenced by the Power of Attorney from Gertrud Gumpert to Fritz Gumpert, as furnished by Special Master Bradfield.

(v) As Professor Neuborne immediately grasped, and pointed out, last Wednesday: Why would Fritz Gumpert give Hans Gumpert a Power of Attorney if there was no account?

(vi) For the Power of Attorney, from Fritz Gumpert to Hans Gumpert, to have been included in the list of Powers of Attorney, someone in the ICEP process must have sighted the document, and made a conscious decision to include it in the list of Powers of Attorney.

(F) Thus, accepting the view your Honor expressed last Wednesday, to the effect that the list of Account Owners is not the authoritative source for identifying Account Owners (as to which, see below), the list of Powers of Attorney substantiates the status of Fritz Gumpert as an Account Owner.

(G) That is all the moreso if a relaxed standard of proof is applied, as required by the Rules (see Memorandum, p 8 ff), and as has been applied by the Court on other occasions. In fact, this case is stronger than some of the examples referred to by your Honor last Wednesday.

## II. SERIOUS TRIABLE ISSUES OF LAW IN THE CASE

(A) Part I, above, has proceeded on the basis that the list of Account Owners is not the authoritative source for identifying Account Owners.

(B) On behalf of the Salingers, issue is respectfully taken with this view. (See Memorandum, page 11 ff.)

(C) In particular, reference is made to the preface to the list of Account Owners, from which your Honor quoted, as demonstrating that the preface itself leaves open the possibility that there may not be an account.

(D) It is respectfully pointed out that the quoted passage does not stand for the proposition for which it was cited. On the contrary, in fact: It proves the opposite.

(E) (i) It is trite to say that, for an entitlement (in people such as the Salingers) to arise, as a consequence of there having existed a Swiss bank account, a number of elements must be fulfilled.

(ii) What the quoted passage does is to list those elements which must be proven by the claimants, and which the list of Account Owners does *not* prove. Put another way, the fact that a bank account is listed does not prove elements such as that the owner was a victim of Nazi persecution; or the relationship of the claimant to the Account Owner; or that the account had deposited funds in it; or that the proceeds of the account had not previously been paid out. These elements must be proven independently.

(iii) But in listing those elements which the existence of a name on the list of Account Owners does *not* prove, altogether omitted is any reference to the existence of a Swiss bank account. Being conspicuously silent on this critical element, the natural implication is that being named on the list is intended to prove that an account existed, and in fact *does* authoritatively demonstrate it. As the name of the list itself makes clear, it is the evidence of a bank account, and nothing more.

(F) All this is confirmed by Rule 18 (2), which lists the bases on which a claim may be ruled *in*admissible. The Rule is silent on the possibility that, despite the published list of Account Owners, the person named did not in fact have an account. The clear inference, therefore, is that

this possibility is not contemplated as being a ground for inadmissibility, as the list is intended to be authoritative.

(G) All that is consistent with the scheme of the CRT process, as set out in the Memorandum, at page 11 ff. It makes sense that, after the laborious, exhaustive and extremely expensive process which resulted in publication of the 2001 list, of those with "the highest likelihood" of belonging to Victims (See Rules, page 2, Part I, and Memorandum, page 9), the published list should be authoritative. Put another way, after that process, what rationale could there be for revisiting the list, and therefore the whole process, in each and every case? (All the moreso because, as your Honor pointed out on Wednesday, relatively speaking very few mistakes have been made.) The rationale upon which the principles of estoppel have been built supports the view that it is unjust, in a long and protracted case such as this, to go back on what was contained in the 2001 published list (and, in this case, confirmed by the Power of Attorneys List).

(H) At the very least, all this points up serious questions of law, revolving around the status of the 2001published list. These questions of law have never been authoritatively determined by the Court. Rather, a process seems to have been developed which assumes that the published list is not authoritative. Yet, although it is submitted, on behalf of the Salingers, that all the evidence points to the published list being authoritative, as demonstrated here there must, at the very least, be serious doubts about the correctness of the assumption on which things have proceeded to date, and the Salingers should be given the opportunity to argue the matter in a proper and orderly manner. That is particularly so, in this case, because the Special Master offers no evidence supporting his finding that Fritz Gumpert was not an account holder. He cites no CRT Rule to support his actions. Authoritativeness is relative. As measured against what the Special Master has produced – or, perhaps better put, not produced - the published list is undoubtedly authoritative.

## III. SERIOUS TRIABLE ISSUES OF FACT IN THE CASE

(A)     The reality is that the Salinger's are in the dark, having had no opportunity to examine the evidence on which their claim has been rejected, in the face of, and notwithstanding, the 2001 published list; a fortiori, they have had no opportunity to test, and challenge, the evidence which is said to contradict that list.

(B) There is something inherently unfair and unsatisfactory about that situation.

(C)     And the questions abound, examples having been set out in the Memorandum, on pages 12 – 13:

"In the cases of both the second and third reviews, there are no details of who conducted the reviews, or under whose supervision, or the expertise of these people; nor of the material that was inspected; nor what the search consisted of; nor how the material in each review related to the material that was considered in each of the other reviews. And, very fundamentally, there is no indication of why any additional reviews were undertaken at all, given the existence of the 2001 List, and the appearance of Fritz Gumpert's name on it.  Yet, despite all these shortcomings in the cryptic treatment of the second and third reviews, the 2001 List, which was prepared in the rigorous circumstances summarized above, has been jettisoned, and the other reviews preferred.  Implicit in both the conclusions of CRT, in the Lothar Salinger decision, and the Special Master, is the assumption that the second and third reviews described above are more reliable than the first. But no reason has been advanced as to why this should be so."

(D)     The problems are compounded when the process within the CRT, both in Zurich as well as Washington, and as between those two offices, in this case is examined. There were extensive communications between the Salingers and both offices, and a draft Award was prepared in Zurich, sent over to Washington, ostensibly for approval, and then returned to Zurich. The details of those communications, and the questions they raise, are troubling.

(E) Considerations of basic fairness militate in favor of giving the Salingers ample opportunity to test the evidence, and to demonstrate that, on any view, the 2001 list is the best available source upon which to base decisions in this case.

## SUMMARY

It is therefore respectfully submitted that:

(A) Under Part I above, the extrinsic corroboration provided is sufficient – and certainly if relaxed standards of proof are applied – to warrant setting aside the Special Master's decision, and finding in favor of the Salingers, in their claim *in re the Account of Fritz Gumpert*.

(B) Alternatively, under Parts II and III, there are serious issues of law and fact that warrant a proper and fair hearing, and a briefing schedule should therefore be set.

Dated: September 28th, 2010
Brooklyn, New York

<u>Harry Reicher</u>
Harry Reicher
Barristers Chambers
1302 50th Street
Brooklyn, NY 11219
Telephone: (718) 854-0001
Facsimile: (718) 854-0202
***Counsel to Jeffrey P. Salinger and Dennis Salinger***
